# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT DEPARTMENT OF THE
TRIAL COURT OF THE COMMONWEALTH

CIVIL ACTION  *11 - 1002A*

NO.

CRANBERRY COMMONS, LTD., Plaintiff(s)

vs.

BIMBO BAKERIES USA, INC., Defendant(s)

### SUMMONS

To the above-named defendant  :  BIMBO BAKERIES USA, INC.

You are hereby summoned and required to serve upon LEONARD M. KRULEWICH plaintiff attorney, whose address is 29 CRAFTS ST, NEWTON, MA , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You are also required to file your answer to the complaint in the office of the Clerk of this court at Brockton either before service upon plaintiff attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff  which arises out of the transaction or occurrence that is the subject matter of the plaintiff  claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire, at Brockton, the 26th day of AUGUST , in the year of our Lord ~~one thousand nine hundred and XXX~~ 2011 .

*Francis R. Powers*

CLERK.

### NOTES

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.  If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. To plaintiff's attorney: please circle type of action involved — Tort — Motor Vehicle Tort — Contract — Equitable Relief — Other.

### PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ............................................................, 19 ...., I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant , in the following manner (See Mass. R. Civ. P. 4 (d) (1-5): ......................................

..........................................................................................................................................

A true copy Attest:  *John Cotter*

Dated: , 19  Deputy Sheriff Suffolk County

N. B.  TO PROCESS SERVER:—

PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

, 19 .

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office at Brockton.

Form 1

# Commonwealth of Massachusetts
## County of Plymouth
### The Superior Court

Plymouth, ss

CIVIL DOCKET # PLCV2011-01002-A
Courtroom CtRm 5 (72 Belmont Street, Brockton)

RE:  **Cranberry Commons LTD v Bimbo Bakeries USA Inc**
TO:

> Leonard M Krulewich, Esquire
> 29 Crafts Street
> Suite 420
> Newton, MA 02458

## SCHEDULING ORDER FOR  F  TRACK

· You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue 06/20/2013.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 11/28/2011 | 11/28/2011 | |
| Response to the complaint filed (also see MRCP 12) | | 12/28/2011 | |
| All motions under MRCP 12, 19, and 20 | 12/28/2011 | 01/27/2012 | 02/26/2012 |
| All motions under MRCP 15 | 12/28/2011 | 01/27/2012 | 02/26/2012 |
| All discovery requests and depositions served and non-expert depositions completed | 06/25/2012 | | |
| All motions under MRCP 56 | 07/25/2012 | 08/24/2012 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/22/2012 |
| Case shall be resolved and judgment shall issue by **06/20/2013** | | | 06/20/2013 |

- · The final pre-trial deadline is **not the scheduled date of the conference.**
- · You will be notified of that date at a later time.
- · Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 08/31/2011

Robert S. Creedon, Jr.
Clerk of the Court

Telephone: (508) 583-8250 ext. 305

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss:                                    Superior COURT
                                                C.A. No. PLCV2011-

************************************************
CRANBERRY COMMONS, LTD.                    *
                Plaintiff(s)                *
v.                                          *
                                            *
BIMBO BAKERIES USA, INC.                    *
                Defendant(s)                *
************************************************

## COMPLAINT

1.   Plaintiff, CRANBERRY COMMONS, LTD. is a duly organized Massachusetts
     corporation having a usual place of business in East Wareham, Plymouth County,
     Massachusetts

2.   Defendant, BIMBO BAKERIES USA, INC., is a duly organized corporation having a
     usual place of business in Horsham Pennsylvania.

3.   Plaintiff is the owner of real property located at 3065 Cranberry Highway, East
     Wareham, Plymouth County, Massachusetts.

4.   Defendant is a national commercial bakery doing business as Bouyea Fassetts and is the
     successor in interest to Bouyea Fassetts, Inc.

5.   The parties entered into a five year lease for the premises at 3065 Cranberry Highway.  A
     copy of the lease is annexed hereto as Exhibit A and made a part hereof.

6.   During the duration of the lease, defendant made numerous structural changes to the
     demised premises.

7.   In accordance with the terms of the lease. Defendant was to repair any damage caused by
     the removal of equipment in the building and for all repairs and maintenance, reasonable
     wear and tear excepted.

8.   When the lease term expired, defendant left the premises in such a condition as to make
     the premises untenantable and causing substantial damage to the building and adjacent
     areas.

9.   Among the damages to the building include the following:

               (A) 2,000 square feet of floor replacement
               (B) window and door replacement
               (C) fence repairs
               (D) paving repairs
               (E) repairs to brick facade damage caused by defendant's trucks
               (F) interior wall repairs and painting

(G) pest removal

(H) rubbish removal

(I) replacement of a portion of the building demolished to accommodate defendant's truck

## COUNT 1

10.     Defendant owes plaintiff Five Hundred Seventy-Four Thousand Nine Hundred Seventy-Six and xx/100 Dollars ($574,976.00) pursuant to the terms of the lease between plaintiff to the defendant, together with interest thereon.

## COUNT 2

11.     Plaintiff repeats and reiterates the allegations contained in paragraph 1-10 as if each were separately set forth herein.

12.     Defendant owes plaintiff Five Hundred Seventy-Four Thousand Nine Hundred Seventy-Six and xx/100 Dollars ($574,976.00) for damages sustained by plaintiff due to defendant's negligence.

WHEREFORE, plaintiff demands judgment against the defendant Five Hundred Seventy-Four Thousand Nine Hundred Seventy-Six and xx/100 Dollars ($574,976.00), attorney fees, interest and court costs.

By its attorneys,

Leonard M. Krulewich
Krulewich & Associates
29 Crafts Street, Suite 420
Newton, MA 02458
(617) 581-6116
BBO# 280660
lenny@krulaw.com

Dated: August 24, 2011
100220

# EXHIBIT A

## LEASE AGREEMENT

THIS LEASE AGREEMENT (this "Lease"), is made and entered into as of this <u>20th</u> day of <u>March</u>, 195<u>5</u>, between <u>Cranberry Commons Ltd.</u>, a(n) Commonwealth of Massachusetts ~~partnership~~, corporation, ~~individual(s)~~ (hereinafter called "Landlord"), and <u>Bouyea Fassetts, Inc.</u>, a(n) <u>Delaware</u> corporation (hereinafter called "Tenant"), and in consideration of the foregoing and of the mutual covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:



1.   <u>Leased Premises</u>. Landlord hereby leases to Tenant and Tenant hereby leases from Landlord those certain premises located in that certain building (the "Building") located at <u>3065 Cranberry Highway</u>, Wareham, Mass consisting of approximately <u>6225</u> sq. ft., together with the right to use the common areas and the land and parking areas surrounding the Building (consisting of approximately <u>18,400</u> square feet) and all site work situated thereon, as depicted in Exhibit A attached hereto and made a part hereof (collectively, the "Leased Premises"). The Leased Premises also shall include any other improvements to be constructed thereon, including without limitation, the Leased Premises Work, as hereinafter defined, as described in Exhibit B attached hereto and made a part hereof. This lease shall be null and void if landlord or tenant are unable to secure necessary permits. 2.   <u>Term</u>. The term of this Lease (the "Term") shall be for a period of <u>Five</u> ( <u>5</u> ) years, commencing on the 15th day of April, 1995 and ending on the 14th day of April, 2000

~~or consent) for the Leased Premises or approval, evidenced governmental or municipal agency, reflecting that all necessary Leased Premises Work, if to be performed by Landlord pursuant to Paragraph 13 below, is substantially completed (the "Commencement Date"). If Landlord fails to deliver the Certificate of Occupancy as required, then Tenant shall have the rights set forth in Paragraph 13, including the right to terminate this lease.~~

30 days after lease is fully executed

3.   <u>Rental</u>. (a)   Tenant shall be obligated to pay rent in advance commencing ~~on the Commencement Date~~ and on the first day of each month thereafter, prorated for any partial calendar month of the Term.   Tenant shall pay annual base rent in the amount of <u>Twenty One Thousand Six Hundred</u> Dollars ($ <u>21,600</u> ) payable in equal monthly installments of <u>Eighteen Hundred</u> Dollars ($ <u>1800.00</u> ).

(b)   Upon execution of this Lease, Tenant shall pay to Landlord the amount of annual base rent due for the first month of the Term.   Unless the box next to subparagraph (c) below is checked, Tenant shall have no obligation to pay any amount of

Updated 12/92

common area charges, condominium assessments, maintenance charges, or any proportionate share of operating expenses, real estate taxes or insurance premiums for the Leased Premises. Notwithstanding the foregoing, Tenant shall pay for the cost of that utility service provided to the Leased Premises solely for the purpose of Tenant's occupancy. ~~In the event that an interruption of any of the utility services to the Leased Premises, not due to the act of Tenant, occurs and continues for a period of five (5) days or longer, the rent due from Tenant for the Leased Premises shall abate for the entire period of time when such utility service is so interrupted.~~



(c)   Tenant agrees to pay its proportionate share of the following:   common area charges, ~~condominium assessments,~~ maintenance charges, operating expenses, real estate taxes, insurance premiums (if applicable, check box next to (c) and strike out inapplicable terms).   Tenant's proportionate share shall be determined by dividing the square footage of the Leased Premises by the square footage of the Building.

4.   <u>Option Period</u>. Within __Six__ ( _6_ ) months, of termination of first Lease term (~~April 14~~, <sup>March 31</sup> 2000 ) Lessee shall have the option to renew this Lease for Five (5) additional years at an annual rental of Thirty One Thousand One Hundred Twenty Five Dollars ( $ 31,125.00 ) payable in equal monthly installments of Twenty Five Hundred Ninety Four Dollars ($ 2594:00 ). ~~parties, but in the absence of agreement, the annual base rent for each year of the entire extension period shall be equal to one hundred three percent (103%) of the annual base rent for the original Term. It is expressly agreed that Tenant shall not forfeit its right to extend this Lease until Landlord has given Tenant written notice of Tenant's failure to provide written election of extension, and Tenant fails to provide such notice of election within fifteen (15) days after Tenant's receipt of Landlord's written notice.~~

5.   <u>Insurance</u>. Tenant, at its sole expense, shall obtain and maintain in effect during the entire Term, with reputable insurance companies duly licensed to do business in the state in which the Building is located, and reasonably acceptable to Landlord, comprehensive general and public liability insurance covering bodily injury or death and property damage with a combined single limit of $1,000,000.00 for each occurrence. Such insurance shall name Landlord as an additional insured as its interests may appear. Alternatively, Tenant shall have the right to self-insure, in whole or in part, against those perils and risks required to be insured against by Tenant. The tenant shall furnish evidence of such insurance as required by Landlord.

6.   <u>Release and Indemnification</u>. (a) Except for the negligent or willful act or omission of Landlord, its agents, invitees and employees, Tenant hereby releases and waives all claims against Landlord, its agents, invitees and employees for injury or damage to person, property or business sustained in or

2

about the Leased Premises by Tenant, its agents or employees. Except for the negligent or willful act or omission of Tenant, its agents, invitees and employees, Landlord hereby releases and waives all claims against Tenant, its agents, invitees and employees for injury or damage to person, property or business sustained in or about the Leased Premises or the Building by Landlord, its agents or employees.

(b)   Landlord agrees to indemnify and save harmless Tenant from and against any and all liability, damage, expense and cause of action arising from injury during the Term to person or property occasioned by any act or omission of Landlord, its agents, invitees and employees.  Tenant agrees to indemnify and save harmless Landlord from and against any and all liability, damage, expense and cause of action arising from injury during the Term to person or property caused wholly or in substantial part by the negligence or willful misconduct of Tenant, its agents, invitees and employees.  Tenant shall not indemnify Landlord against any matter for which Landlord is strictly liable under applicable law.  If Landlord or Tenant or their respective agents, invitees or employees are only partially responsible for any such liability, damage, expense or cause of action, then this indemnification shall apply only to that portion of culpable conduct attributable to Landlord or Tenant (or their respective agents, invitees or employees), as the case may be.  Any such indemnification shall survive the termination or expiration of this Lease for any reason whatsoever.

7.   Landlord's Repair and Maintenance.  Landlord shall have the duty and obligation (a) to maintain and repair all electrical, plumbing, heating, ventilation and air conditioning and other mechanical systems located in or serving the Leased Premises or the Building; (b) to maintain and make all repairs to the roof and structural portions or members of the Leased Premises or the Building including, but not limited to, foundations and foundation footings, walls, concrete floors, roofs and roof surfaces, and all load bearing partitions and structures; (c) to maintain and make all repairs to the exterior of the Leased Premises or the Building; (d) to make all repairs to the Leased Premises or the Building which may be necessary or appropriate by reason of any failure of Landlord to perform any of its covenants or obligations under this Lease; and (e) to make such alterations and repairs as will cause the Leased Premises and the Building to be and continue to remain in compliance with any and all present or future laws, rules or regulations of any governmental unit having jurisdiction thereover, including, without limitation, any obligations imposed by the Americans with Disabilities Act.  Landlord represents and warrants that as of the date hereof, the Building and Leased Premises are in full compliance with all laws including, without limitation, the Americans with Disabilities Act.

8.   Tenant's Repairs and Maintenance.  Tenant, subject to Landlord's obligations as set forth in Paragraph 7 above,

shall (a) comply with all laws, orders, rules and requirements of governmental authorities, insurance carriers, board of fire underwriters, or similar groups applicable to Tenant's use or occupancy of the Leased Premises; (b) maintain the Leased Premises in good repair and appearance, ordinary wear and tear, condemnation, casualty and acts of God excepted; and (c) notify the Landlord of any conditions which are in need of repair which Landlord does not know or reasonably should not know. Tenant shall pay any reasonable expenses involved in complying with the above.

9.  **Right of Entry.**  Landlord or Landlord's agent may enter the Leased Premises at reasonable hours, and upon at least one (1) day's advance notice (except in the case of emergencies), to examine the same, to show it to prospective buyers, mortgage lenders, contractors or insurers and to do anything that the Landlord is required to do hereunder, provided Landlord uses its best efforts to avoid interference with Tenant's use, or the conduct of its business, in and upon the Leased Premises. Lessor reserves right to enter and maintain furnace situated within the leased area which provides heat for the adjoining tenant.

10.  **Damage or Destruction.**  Notwithstanding anything contained in this Lease, Tenant shall have the option and right to terminate this Lease effective as of the date of destruction, damage or casualty, as the case may be, upon written notice thereof from Tenant to Landlord if the rebuilding or repair of any partial or complete destruction, damage or casualty to the Leased Premises cannot reasonably be completed within ninety (90) days from the date of such partial or complete destruction, damage or casualty.  In the event that (a) such destruction, damage or casualty occurs and (b) this Lease remains in full force and effect, then the rent shall abate from the date of the destruction, damage or casualty and for that period during which the Leased Premises are untenantable (prorata to the extent of a partial untenantability or as the Leased Premises become tenantable upon rebuilding and repair).

11.  **Eminent Domain.**  If the entire Building or Leased Premises or any part thereof is taken or claimed pursuant to a right of condemnation or eminent domain, Tenant may terminate this Lease by giving written notice of termination to Landlord. If this Lease is not terminated, the monthly rent payable hereunder shall be abated in an amount proportionate to said taking commencing from the date of such taking.  In the event that a condemnation or eminent domain proceeding occurs, Tenant agrees not to claim any award of damages suffered by it by reason of such taking or conveyance, provided that Tenant reserves the right to maintain a separate cause of action against the condemning authority for the value of the inventory, stock, trade fixtures and unamortized improvements paid for by Tenant, as well as Tenant's relocation costs.

12.  **Alterations and Additions.**  Subject to the terms of Paragraph 13 hereof, if applicable, Tenant shall not make any structural alterations or material additions in or to the Leased

Premises, without the prior written consent of Landlord ("Landlord Consent"), which consent shall not be unreasonably withheld or delayed. ~~Notwithstanding the foregoing, Tenant, without Landlord's Consent, may make or cause to be made, any alterations, additions, or improvements to the Leased Premises, the cost of which, in each case, does not exceed $____. In addition, Tenant may install and operate in and upon the Leased Premises such trade fixtures, equipment, machinery, and appliances as it shall consider necessary or desirable for the conduct of its business, without Landlord's Consent, and shall retain ownership of any such trade fixtures upon the expiration or termination of this Lease.~~ Such alterations, additions, improvements and trade fixtures shall comply with all applicable city, county and local ordinances and regulations. Tenant shall not allow any mechanic's lien or other claim to be filed against the Building or Leased Premises and as to any lien so filed, shall have it promptly removed or insured over by a reputable title insurance company.

13. **Leased Premises Work.** Landlord shall deliver the Leased Premises to Tenant in a condition suitable for the operation and conduct of Tenant's business activity. In addition to the foregoing, within _____ (__) days after the execution of this Lease, _____ shall make and complete in and to the Leased Premises the Work and installations more particularly described in Exhibit B attached hereto and made a part hereof (herein "Leased Premises Work"). _____ shall pay for the cost of Leased Premises Work. The placement and exact specifications of the Leased Premises Work shall conform to the plan attached hereto as Exhibit C and made a part hereof. The Leased Premises Work shall be of material, design, capacity, quality, finish and color of the standard adopted by Landlord in the Building. Notwithstanding the foregoing, if the Landlord is obligated, and fails, to perform the Leased Premises Work within _____ (__) days following the execution of this Lease, Tenant shall have the right, but not the obligation, to cause the Leased Premises Work to be performed and seek reimbursement or offset against rent due hereunder for its costs without waiving all other rights and remedies Tenant may possess in equity and at law, including the right to terminate this Lease. If Landlord is obligated to perform the Leased Premises Work, Landlord shall complete the Leased Premises Work in a good and workmanlike manner and in compliance with all laws, including, without limitation, the Americans with Disabilities Act. Tenant's acceptance of the Leased Premises is subject to Tenant's right to prepare and submit a punchlist of incomplete and/or incorrect items within thirty (30) days after taking possession of the Leased Premises. Landlord shall complete such punchlist items within thirty (30) days after receipt of Tenant's punchlist.

14. **Use.** Tenant may use and occupy the Leased Premises for the conduct of Tenant's business, including, without limitation, the storage of its inventory and other property, for retail sales and administrative office purposes, as a

distribution and route center for its inventory and any other
lawful uses incidental to the foregoing uses.   Landlord
represents and warrants that the Leased Premises may be used for
the purposes set forth in this Paragraph 14, that such uses will
not cause an increase in the rate of insurance for the Leased
Premises, that such uses are not violative of any applicable
laws, ordinances, rules or regulations, and that such uses do not
require a special use permit or variance.

15.   Default by Tenant.   Tenant shall be deemed to be
in default under this Lease if:   (a) Tenant fails to pay any sum
of money when due under this Lease ("monetary default") and such
failure continues for ten (10) days after written notice from
Landlord   to   Tenant   specifying   such   monetary   default;   or
(b) Tenant fails to observe or perform any of its covenants or
agreements under this Lease, other than a monetary default ("non-
monetary default") and Tenant fails to cure such non-monetary
default within thirty (30) days of written notice from Landlord
to Tenant specifying the same (or if such non-monetary default
cannot reasonably be cured within said 30-day period, Tenant has
not commenced its curative efforts within said 30-day period or
does not thereafter in good faith diligently prosecute such
curative efforts to completion within a reasonable period,
depending on the nature of the non-monetary default).   In the
event Tenant is deemed to be in default hereunder, Landlord, upon
written notice to Tenant, shall have the right (i) to terminate
this Lease,   (ii) to terminate   Tenant's   right   of   possession
hereunder, without terminating this Lease and dispossess Tenant
of the Leased Premises in accordance with applicable laws and
judicial procedures, or (iii) to cure any such default for and at
the expense of Tenant.   In addition, Landlord shall be entitled
to receive from Tenant Landlord's reasonable costs and expenses,
including reasonable attorneys' fees, but no consequential costs
or damages, incurred by Landlord as a result of Tenant's default
under this Lease.   In the event that Tenant is deemed to be in
default under this Lease and Landlord elects to terminate this
Lease or Tenant's right to possession of the Leased Premises
hereunder, Landlord shall have the duty and obligation to use its
best efforts to pursue diligently the reletting of the Leased
Premises in mitigation of any damages or costs incurred by
Landlord as a result thereof.

16.   Default by Landlord.   Notwithstanding anything
contained in the Lease to the contrary, Landlord shall be deemed
to be in default under this Lease if:   (a) Landlord fails to
observe or perform any of its covenants or agreements under this
Lease; (b) Tenant gives written notice specifying such failure to
Landlord; and (c) Landlord fails to commence a curative effort,
diligently and in good faith, within thirty (30) days of such
notice or Landlord thereafter fails to pursue a cure, diligently,
continuously and in good faith.   If Landlord is in default of
this Lease, Tenant, in Tenant's sole discretion, shall have the
right, but not the obligation, and in addition to all rights of
Tenant at law and in equity, (i) to terminate this Lease upon

6

written notice to Landlord; or (ii) to cure any such default for
and at the expense of Landlord, whereby Landlord shall pay such
costs and expenses, including reasonable attorneys' fees,
incurred by Tenant on behalf of Landlord within thirty (30) days
of Tenant furnishing Landlord with a written invoice specifying
such costs and expenses and if such costs and expenses, as
submitted in said invoice, are not paid by Landlord within said
thirty (30) days, Tenant may set off said amounts against future
payments of rent due under this Lease. In addition, Tenant shall
be entitled to receive from Landlord all of Tenant's reasonable
costs and expenses, including reasonable attorneys' fees, but no
consequential costs or damages, incurred by Tenant as a result of
Landlord's default under this Lease.

          17.   Notice.  Any and all notices herein required shall
be in writing and shall be given to the appropriate party, as the
case  may  be,  at  the  following  addresses:     (a) Landlord:
Cranberry Commons Ltd., 3065 Cranberry Highway, Wareham Ma. 02571and
(b) Tenant:   c/o Kraft General Foods, Inc., Three Lakes Drive,
Northfield, Illinois  60093-2758, Attn:  Real Estate Dept.; with
an informational copy to Tenant at the Leased Premises.

          Any notice may be given by personal delivery to the
other party at the address specified above or may be given by
sending such notice by United States certified mail, return
receipt requested, postage prepaid, addressed to the other party
at the address specified above.  Notice shall be deemed to have
been given when delivered or two (2) days following deposit in
the United States mails as provided above.  Either party may
change its address for the purpose of notice by giving thirty
(30) days' prior written notice to the other party at its address
provided herein.

          18.   Assignment and Subletting.   Tenant shall not
assign or sublet the Leased Premises, or any part thereof,
without the prior written consent of Landlord, which consent
shall  not  be  unreasonably  withheld.  Notwithstanding the
foregoing, Tenant, without Landlord's consent, may assign this
Lease or sublet the Leased Premises, or any portion thereof, to
its parent, any of its subsidiaries or to any other entity
affiliated with Tenant or its parent, or to a corporation or
other entity resulting from any reorganization or merger to which
Tenant, its parent or any of its subsidiaries or affiliates is a
party.  In the event that Tenant assigns this Lease pursuant to
the terms herein, Tenant shall be released from all of its
covenants and obligations arising under this Lease, without the
further act or agreement by Landlord, if the assignee has a net
worth of at least $1,000,000.00 and such assignee accepts and
assumes all of the Tenant's obligations under this Lease.

          19.   Quiet Enjoyment.   Provided Tenant is not in
default, Landlord covenants and agrees that Tenant shall have the
right to peaceable possession and quiet enjoyment of the Leased
Premises, without any hindrance from Landlord, its agents,

7

successors, guests, invitees, licensees or persons claiming by or
through Landlord. Landlord agrees to take all reasonable and
necessary steps in order to provide the Tenant with the peaceable
possession and quiet enjoyment of the Leased Premises.

20. Signs. ~~Tenant shall be permitted to place signage~~

Tenant may, with written approval of land-
lord, install signs on the leased premises, such approval may not
unreasonably be withheld.

~~other such signage, at tenant's sole cost, provided that tenant
repairs any damage to the Leased Premises caused by such removal.~~



21. Subordination and Non-Disturbance. Tenant agrees
to attorn to any mortgagee, ground lessee or any successor to
Landlord's interest in the Building and Leased Premises and in
connection therewith, to execute any subordination and attornment
agreement(s) reasonably requested by Landlord to evidence
Tenant's agreement, provided that Landlord or the entity or the
party on whose behalf or direction Landlord requests such
documents or instruments, including all present and future
mortgagees, furnishes Tenant with a written agreement that
Tenant's possession will not be disturbed and that this Lease
shall remain in full force and effect, without increasing
Tenant's obligations and duties and without diminution or
reduction of Tenant's rights and privileges under this Lease, so
long as there is no default, after expiration of all applicable
notice, grace and cure periods, by Tenant under this Lease.

22. Brokers. When Tenant takes possession of the
Leased Premises under the Lease, Landlord shall pay a real estate
commission to Upper Cape Commercial Corp. _____ (the "Brokers"), if
any, as provided for in the written agreement between Landlord
and Brokers. Each party hereby indemnifies and holds the other
party harmless from any claim for broker's commissions or
finders' or other fees by a broker or finder (other than the
Brokers) claiming by, through or under the indemnifying party.
This indemnification shall survive the termination or expiration
of this Lease.

23. Environmental. Landlord shall comply, and take
all necessary actions to cause the Building to comply, with all
applicable federal, state and local requirements relating to the
protection of public health, safety and welfare, and with all
applicable environmental laws relating to the Building. Landlord
is responsible for, and agrees to hold harmless, indemnify and
defend Tenant from any and all claims, costs and liabilities
related to the presence of toxic or hazardous substances, in or
on the Leased Premises or the Building, unless caused by Tenant.
Tenant shall comply, and take all necessary actions to cause its
operations on the Leased Premises to comply, with all applicable
federal, state and local requirements relating to the protection
of public health, safety and welfare, and with all applicable
environmental laws relating to the Leased Premises. Tenant is

5.

responsible for, and agrees to hold harmless, indemnify and defend Landlord from any and all claims, costs and liabilities related to Tenant's delivery of toxic or hazardous substances onto the Leased Premises or Tenant's acts which solely result in the violations of any such laws. The indemnifications set forth in this paragraph shall survive the termination or expiration of this Lease.

24. **Surrender.** Upon expiration or other termination of this Lease, Tenant shall yield possession of the Leased Premises to Landlord in substantially the same order and condition as existed when Tenant took possession of the Leased Premises, wear and tear, casualty, condemnation and acts of God and items which Tenant is not obligated to repair, maintain or replace excepted. Any holding over by Tenant after the expiration or the termination of this Lease shall be deemed to be a tenancy from month to month only, and said tenancy shall be upon the same terms, covenants and conditions as contained herein, including the rental, as were in affect during the last month of the Term. In the event that Tenant's occupancy is deemed to be a month-to-month tenancy, Tenant shall not be obligated to pay for any costs, damages or expenses claimed by Landlord as a result of Tenant's hold-over in excess of the rents specified in this Paragraph 24.

25. **Entirety.** This Lease represents and contains the entire agreement of the parties with respect to the subject matter hereof, shall extend to the benefit of and be binding upon the parties and their respective successors and assigns, shall be construed as the product of the joint negotiation and drafting of both Landlord and Tenant and no imputation shall be made against or in favor of either party in connection with the actual drafting or preparation of this Lease. No other agreement shall be binding upon the parties or affect the terms of this Lease unless it is in writing, signed by both parties and references this Lease. No waiver of any breach or violation of any of the covenants, conditions or provisions hereof shall be construed as a waiver of any other or subsequent breach or violation of the same or any other covenant, condition or provision hereof.

26. **Severability.** If any provision of this Lease is or shall be deemed to be illegal, invalid or unenforceable, the remaining provisions hereof shall remain in full force and affect and this Lease shall be interpreted as if such illegal, invalid or unenforceable provision did not exist herein.

27. __Rider__.  The Rider attached hereto is incorporated herein and made a part hereof by this reference (if applicable, check box next to 27 and attach Rider).

IN WITNESS WHEREOF, the parties hereto have caused this Lease to be executed as of the day and year above written.

LANDLORD: Cranberry Commons, Ltd.    TENANT: Bouyea Fassetts, Inc.

By: _____      By: _____
    Its: _____             Its: _____

a (n) Corporation _____        a (n) Corporation _____

By: _____      By: _____
    Its: _____             Its: _____

EIN: 043193208

RIDER TO LEASE AGREEMENT ("LEASE")
DATED AS OF MARCH 20, 1995 BETWEEN CRANBERRY COMMONS LTD.
("LANDLORD") AND BOUYEA-FASSETS, INC. ("TENANT")


R-1.   Agreement.  The Rider attached hereto is incorporated herein and made a part hereof by this reference.  In the event of any inconsistency between the Agreement and this Rider, the terms of this Rider shall control.

R-2.   Term.  (Add to Paragraph 2)  Notwithstanding anything in paragraph 2 of this Lease to the contrary, the term of this Lease will commence the 1st day of April, 1995 and end on the 31st day of March, 2000.

R-3   Rent.  (Add to Paragraph 3)  Notwithstanding anything in paragraph 3 of this Lease to the contrary, no rent (including without limitation amounts due pursuant to subparagraph 3(c) below) shall be due or payable for the month of April, 1995.  Rent payments shall commence on May 1, 1995.

R-4.   Release and Indemnification.  (Add to Paragraph 6)  Tenant shall not indemnify Landlord against claims for breach of the Lease Agreement or consequential damages.

R-5.   Leased Premises Work.  (Add to Paragraph 13)  Landlord shall deliver the Leased Premises to Tenant in a condition suitable for the operation and conduct of Tenant's business activity.  Landlord shall provide HVAC units in the Leased Premises.  In addition, Tenant shall make and complete in and to the Leased Premises the work and installation more particularly described in Exhibit B attached hereto and made a part hereof (herein "Leased Premises Work").  Tenant shall pay for the cost of Leased Premises Work.

R-6.   Notices.  (Add to Paragraph 17)  Copies of all notices should be sent to the address of Kraft Foods, Inc., Three Lakes Drive, Northfield, Illinois  60093-2758, Attention: Real Estate Department.

R-7.   Surrender.  ( Add to Paragraph 24)  At the termination of the Lease term, Tenant may, but shall not be required to remove any alterations, additions or improvements to the Leased Premises.  If Tenant removes any such items, Tenant shall repair any damage caused by such removal.  Any items not removed by Tenant shall become Landlord's property upon termination of this Lease.  Tenant shall not allow any mechanic's lien or other claims to be filed against the Building or Leased Premises and as to any lien so filed, shall have it promptly removed or insured over by a reputable title insurance company.

R-8.   Conflicts.  In the event any typewritten modification of a printed provision of this Lease is inconsistent with the printed provision, the typewritten modification shall prevail and govern.

R-9.   Access.  Landlord represents and warrants that the Leased Premises have direct vehicular and pedestrian access to and from Sandwich Road (Route 6).

R-10.  Mediation.  If a dispute arises out of or relates to this Lease or the breach thereof and if the dispute cannot be settled through negotiation, the parties agree first to attempt in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to arbitration, litigation or some other dispute resolution procedure.  The cost of such procedure shall be divided equally between the parties.

IN WITNESS WHEREOF, the parties hereto have caused this Rider to Lease Agreement to be executed as of the day and year above written.

LANDLORD:                                TENANT:

CRANBERRY COMMONS, LTD.,                 BOUYEA-FASSETTS, INC.,
a Commonwealth of Massachusetts          a Delaware corporation
corporation

By:_____             By:_____
Its:_____             its:_____

May 26 10 05:36p        peter fe             15081444 80            p.7



| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department County:_____ |
|---|---|---|

**PLAINTIFF(S)**
CRANBERRY COMMONS, LTD.

**DEFENDANT(S)**
BIMBO BAKERIES USA, INC.

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
LEONARD M. KRULEWICH, KRULEWICH & ASSOC
29 CRAFTS ST, NEWTON, MA 617.581.6116
Board of Bar Overseers number: 280660

**ATTORNEY (if known)**

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A08 | terms of lease | ( ) | ( ) Yes ( X ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
                                                                            Subtotal $. . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . . $. . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .
F. Other documented items of damages (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                            $. . . . . . . . . . .
                                                                     TOTAL $. . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

terms of lease between plaintiff to the defendant

                                                          574,976.00
                                                   TOTAL $. . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____                    DATE: 8/25/11

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

COMMONWEALTH OF MASSACHUSETTS

TRIAL COURT
DISTRICT OF MASSACHUSETTS

## UNIFORM  COUNSEL CERTIFICATION FOR CIVIL CASES

CASE NAME: CRANBERRY COMMONS, LTD.
v.BIMBO BAKERIES USA, INC.
DOCKET #: PLCV2011-

I am attorney of record for: Cranberry Commons, Ltd.
plaintiff in the above-entitled matter.

In accordance with rule 5 of the Supreme Judicial Court Uniform Rules of Dispute
Resolution(SJC Rule 1:18) which states in part: "...Attorneys shall: provide their clients with this
information about court-connected dispute resolution services; discuss with their clients the
advantages and disadvantages of the various methods of dispute resolution; and certify their
compliance with this requirement on the civil cover sheet or its equivalent...," I hereby certify
that I have complied with this requirement.

_____
Leonard M. Krulewich, Esq.