UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11654-RWZ

CRANBERRY COMMONS, LTD.

v.

BIMBO BAKERIES USA, INC.

MEMORANDUM OF DECISION

July 18, 2012

ZOBEL, D.J.

     Plaintiff claims against defendant in two counts: breach of contract (Count I) and negligence (Count II). In 1995 the parties entered into a five-year commercial lease (the "Lease"). Through a series of addendums, the Lease was extended to November 2008, and in March 2009 the defendant vacated the premises. Plaintiff alleges that defendant left the demised premises in disrepair and that it was required to install replacement flooring, windows, doors, and fencing. In addition, it had to repair and repaint the interior walls and re-pave certain areas around the premises and make other significant interior and exterior repairs. Plaintiff contends these costs are properly attributable to defendant under the terms of the Lease, addendums, and a 1995 rider to the original Lease (the "Lease Rider"). Plaintiff also seeks certain "allocable expenses" comprising of, inter alia, common expenses and real estate taxes, and it requests

judgment for all items in the amount of $574,976 plus interest, attorney fees and costs. The matter is before me on defendant's motion for summary judgment.

**I. Analysis**

Plaintiff's claims fall generally into two categories: first, $246,603 for allocable expenses from 2003-2008. Allocable expenses includes, per Section 3(c) the Lease, "common area charges, maintenance charges, operating expenses, real estate taxes, [and] insurance premiums...".[1] Second, $328,373 in "restoration costs" for returning the leased premises "back to the original layout ...," including $33,520 for "repaving services," for a total sum claimed of $574,976.

**A. Allocable Expenses**

Defendant challenges the claim for allocable expenses because plaintiff had never sought these charges at any time during the 14 years of the lease. Given the prior course of dealing by the parties and their respective performance under the Lease, plaintiff is now barred by the doctrines of estoppel, waiver and/or laches.[2] Defendant further notes it was prejudiced by plaintiff's failure to charge these expenses because it would not have renewed the Lease had it known of plaintiff's intent to levy them. Finally, defendant argues that plaintiff's negligence claim is barred by the economic loss doctrine.

---

[1] The same provision provides "Tenant's proportionate share shall be determined by dividing the square footage of the Leased Premises by the square footage of the Building."

[2] Defendant, in its answer, separately raises the affirmative defenses of estoppel, waiver and laches.

As an initial matter, Massachusetts applies a 6-year statute of limitations for breach of contract actions which begins to accrue at the time of the breach. Saenger Organization, Inc. v. Nationwide Ins. Licensing Associates, Inc., 119 F.3d 55, 64 (1st Cir. 1997) (citing Mass. Gen. Laws ch. 260, § 2). This action was filed on August 24, 2011. Plaintiff may only recover for breaches that occurred during the period from August 24, 2005, until August 24, 2011. Therefore, to the extent that any portion of the $246,603 in "allocable expenses" is attributable to breaches that occurred outside of this time period, it is barred.

### 1. Estoppel, Laches and Waiver of Affirmative Defense

To establish estoppel defendant must show (1) a representation, or conduct amounting to a representation, intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct; and (3) detriment to such person as a consequence of the act or omission. Cellucci v. Sun Oil Co, 2 Mass.App.Ct. 722, 728 (1974). Waiver "must be premised upon 'clear, decisive, and unequivocal conduct on the part of an authorized representative ... indicating that [it] would not insist on adherence to the [agreement].' " Paterson–Leitch Company, Inc. v. Massachusetts Electric, 840 F.2d 985, 992 (1st Cir.1988). Laches requires: "1) unreasonable delay in pursuing a claim, and 2) prejudice to the opposing party resulting from that delay." USL Capital v. New York 30, 975 F.Supp. 382, 386 (D. Mass. 1996).

Plaintiff argues that laches cannot excuse failure to comply with a written contract, citing Srebnick v. Lo–Law Transit Mgmt., Inc., 29 Mass.App.Ct. 45, 49 (1990).

However, Srebnick addressed a request to amend under Mass.R.Civ.P. 15(a) and explicitly acknowledged "procedurally, of course, equitable defenses may be raised in actions at law." 29 Mass.App.Ct. at 50; see also Summer Hill Limited Partnership v. Double Dixon Inc., 2010 WL 1779647 (Mass.App.Ct. 2011) (holding trial judge within her authority to hear and decide laches and estoppel defenses to action arising out of contract). Further, in Dipietro v. Sipex Corporation, 69 Mass.App.Ct. 29, 39-40 (2007), the court rejected the lower court's application of Srebnick to bar defendant's estoppel defense in an action for breach of a promissory note, noting "we are not persuaded that there is an unambiguous and compelling rule of law in Massachusetts making estoppel unavailable as a defense to an action for the enforcement of a promissory note ...." In the absence of "a resultant rule of law (statutory or decisional) compelling a decision for one or the other party," defendant may assert its laches and estoppel defenses. Dipietro, 69 Mass.App.Ct. at 40.

Defendant contends CNA Corporation v. Stoney Hill Sand & Gravel, Inc., 80 Mass App. Ct. 1101 (2011), compels judgment in its favor on the waiver defense. However, the CNA court was tasked with determining whether a prior written lease applied to a holdover tenancy and found that the landlord's acceptance of a lower rent for an extended period of time after the expiration of the original lease resulted in a new agreement. It also found that plaintiff's failure to collect taxes during the initial lease and extended period following its expiration acted as a waiver of the payment of taxes. CNA set forth its waiver finding in one sentence with no explanation. It is unclear what role facts adduced at the bench trial before the lower court may have had in its

determination and, as such, I do not read CNA as providing a rule of law compelling judgment in defendant's favor on waiver.

Plaintiff notes that "with each renewal, Orograin Bakeries affirmed its obligations to make [allocable expenses] payments," and that if defendant was concerned about the additional allocable expenses it could have inquired of plaintiff or discovered the real estate tax amounts, which are a matter of public record. Defendant counters that plaintiff regularly billed it for operating expenses, that it paid those expenses and that plaintiff did not make any demand for the amounts it now claims, dating back to 2003, until nine months after it had vacated the premises. It says that it would not have renewed the Lease had it known plaintiff would seek additional expenses and therefore was prejudiced. Although plaintiff's late claims do not appear to reflect normal and customary business practices, the facts surrounding these events are in dispute, foreclosing summary judgment.

### 2. Economic Loss Doctrine

Plaintiff sues for negligence and breach of contract on the same underlying facts and for the same damages. Defendant argues that plaintiff's claim for allocable expenses is barred by the economic loss doctrine because it is a claim for pure economic damages, not for personal injury or property damage. See Aldrich v. ADD Inc., 437 Mass. 213, 222 (2002). Plaintiff ignores this argument in its opposition; therefore, it is deemed waived, and summary judgment in defendant's favor is proper. See Schneider v. Local 103 I.B.E.W. Health Plan, 442 F.3d 1, 3 (1st Cir. 2006) (citing Nikijuluw v. Gonzales, 427 F.3d 115, 120 n.3 (1st Cir. 2005) (affirming district court's

5

dismissal of "abandoned" claims noting "it is well-established that issues ... unaccompanied by some effort at developed argumentation, are deemed waived").

Although defendant has moved for summary judgment on the negligence claim only as it relates to allocable expenses,[3] the remainder is also barred as it effectively merges into the contract claim.

Negligence requires the plaintiff to prove duty, breach, causation, and harm. See Banaghan v. Dewey, 340 Mass. 73, 162 N.E.2d 807, 812–13 (1959). Thus, if defendant is found to have acted within its contractual rights in leaving the premises in the condition it did, as a matter of law, there can be no "breach" of any duty owed to plaintiff. Cf. Coriatt-Gaubil v. Roche Bobois Int'l, S.A., 717 F. Supp. 2d 132, 139 (D. Mass. 2010) (plaintiff "fails to provide persuasive authority for the proposition that enforcing (or causing to be enforced) uncontested, bargained-for contractual rights such as those contained in the franchise agreements can constitute a breach of [ ] duty." ); PepsiCo v. Cent. Inv. Corp., 271 F. Supp. 2d 1040, 1056 (S.D. Ohio 2001) ("A party to a contract does not breach any duties by seeking to enforce its legal and contractual rights."); PacifiCorp v. Pub. Util. Dist. No. 2 of Grant County, 780 F. Supp. 2d 1133, 1141 (D. Or. 2011) ("party does not breach [ ]duty [ ] by standing on its contractual rights"). Similarly, if plaintiff succeeds on its contract-based claim, no additional recovery is sought or permitted in tort. Freeman v. MetLife Group, Inc., 583 F. Supp. 2d 218, 222 (D. Mass. 2008) ("where the plaintiff has claimed contract liability

---

[3] This is because presumably plaintiff's claim for restoration fees do involve damage to property; therefore, it is unclear whether it would be barred in Massachusetts under its recitation of the economic loss rule.

… the same underlying conduct can [not] be labeled as tortious [ ] and thus allow for additional recovery under tort liability.") Therefore, even if both the negligence and contract claims remain, as a practical matter, there is no difference between them. The negligence count adds nothing to plaintiff's claims (rather, it limits those claims because they are subject to a shorter statute of limitations).

## B. Restoration Costs

Finally, defendant contends it does not owe the remaining $328,373 plaintiff seeks for restoring the premises because it did not have a duty to remove any improvements or structural changes made thereto, and because the items plaintiff did repair and/or restore after defendant vacated all related to areas that, under the Lease, plaintiff was obligated to maintain.

Defendant acknowledges that Section 24 of the Lease provides that upon termination of the Lease, it was required to "...yield possession of the Leased Premises to Landlord in substantially the same order and condition as it existed when Tenant took possession of the Leased Premises ...." However, the provision specifically excepts "wear and tear, casualty, condemnation, and acts of God and <u>items which Tenant is not obligated to repair, maintain or replace</u> [ ]." Further,

Section 7 of the Lease provides:

> Landlord shall have the duty and obligation to maintain and repair all electrical, plumbing, heating, ventilation and air conditioning and other mechanical systems located in or serving the Leased Premises or Building; (b) to maintain and make all repairs to the roof and structural portions or members of the Leased foundations and foundation footings, walls, concrete floors, roofs, roof surfaces, and all load bearing partitions and structures; (c) to maintain and make all repairs to the exterior of the Leased Premises or the Building ....

7

Section 8 of the Lease provides:

> Tenant, subject to Landlord's obligations as set forth in Paragraph 7 above, shall ... (b) maintain the Leased premises in good repair and appearance, ordinary wear and tear, condemnation, casualty and acts of God excepted; and (c) notify the Landlord of any conditions which are in need of repair which Landlord does not know or reasonably should not know. Tenant will pay any reasonable expenses involved in complying with the above.

Section R-7 of the Lease Rider states:

> Tenant may, but shall not be required to remove any alterations, additions, or improvements to the Leased Premises. If Tenant removes any such items, Tenant shall repair any damage caused by such removal. Any items not removed by Tenant shall become Landlord's property upon termination of this lease.

> The parties acknowledge that:

> [t[here is no dispute between [the ...] about the language of the Lease, or even which language takes priority vis-a-vis the body of the Lease or riders ...."

Because the contract is unambiguous, it is interpreted according to its plain and natural meaning. See Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995). Section 24 requires defendant to return the premises to plaintiff in the "same order and condition" as it was when the Lease began excepting "items which Tenant is not obligated to repair, maintain or replace." These excepted items include the enumerated obligations the landlord assumed under Section 7 (i.e. electrical, plumbing, heating, ventilation, air conditioning, and mechanical systems; structural portions or members; foundation footings; walls; concrete floors; roofs; roof surfaces; all load bearing partitions/structures; and the premises' exterior). Further, under R-7 of the Lease Rider, the tenant is not obligated to remove "any alterations, additions, or improvements," and this provision only requires plaintiff to pay repair costs in the event

8

such alterations additions and improvements are removed. Similarly, Section 8 of the Lease which obligated the tenant to maintain the "Leased premises in good repair and appearance" is limited by the Landlord's specifically enumerated responsibilities in Section 7 and by any "ordinary wear and tear."

Defendant is therefore entitled to summary judgment on the portion of the $328,373 in restoration costs that are specifically attributable to the items of maintenance and repair delineated as the landlord's responsibilities under the Lease. While plaintiff has presented an itemized list of the restoration expenses, the precise breakdown of the $328,373 is unclear on the existing record.  However, the discrete and separately quoted $33,520 fee for repaving (Ex. 25 to Defendant's 56.1 Statement) included in this amount is one expense that can easily be addressed. As discussed, Sections 24 and 7 of the Lease put the onus of maintaining and repairing the exterior of the premises on the landlord, regardless of wear and tear.  Accordingly, under the clear wording of the contract, defendant is not responsible for this amount and is entitled to summary judgment thereto.

## II. Conclusion

Defendant's motion for summary judgment (Docket # 7) is ALLOWED as to Count II in its entirety.  With respect to Count I, it is ALLOWED as to all claims outside the statute of limitations and the repaving claim in the amount of $33,520, and DENIED as to all other claims.

|  July 18, 2012  | /s/Rya W. Zobel |
| --- | --- |
| DATE | RYA W. ZOBEL |

9

UNITED STATES DISTRICT JUDGE