UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11654-RWZ

CRANBERRY COMMONS, LTD.

v.

OROGRAIN BAKERIES, INC.

MEMORANDUM OF DECISION

September 30, 2013

ZOBEL, D.J.

Plaintiff/Landlord Cranberry Commons and Defendant/Tenant Orograin Bakeries entered into a five-year commercial lease in 1995 (the "Lease"). They signed six addenda, which extended the term of the Lease to November 2008. Defendant vacated the premises in March 2009. Thereafter, plaintiff demanded payment of real estate taxes, operating and management expenses and other costs. Defendant did not pay, and plaintiff filed this suit for breach of the Lease and a 1995 rider thereto (the "Lease Rider"), Count 1, and negligence, Count 2. The matter is now before me on defendant's renewed motion for summary judgment and plaintiff's cross-motion for summary judgment as to liability.

I.   **Background**

Defendant earlier moved for summary judgment, and I allowed the motion as to Count 2 in its entirety and a substantial portion of Count 1. The earlier order barred

plaintiff's allocable expenses claims for expenses incurred before August 24, 2005.[1] It also concluded that defendant is not required to pay for restoration costs delineated as the landlord's responsibilities under the Lease. Plaintiff seeks $429,965.20 in allocable expenses and $77,820.00 in restoration costs, for a total sum of $507,785.20 in damages.

Two issues must still be decided: (1) whether defendant is liable for any of plaintiff's surviving claims for allocable expenses, restoration costs, real estate taxes and lost rents; and (2) the amount, if any, defendant owes.

## II. Legal Standard

Summary judgment will be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must view the record in the light most favorable to the nonmovant and draw all justifiable inferences in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If the evidence presented would allow a reasonable jury to return a verdict for the nonmovant, summary judgment must be denied. Id. at 248. When the parties cross-move for summary judgment, the court applies the same standard to each motion. See Atl. Fish Spotters Ass'n v. Evans, 321 F.3d 220, 224 (1st Cir. 2003).

## III. Analysis

### A. Allocable Expenses

---

[1] Massachusetts applies a six-year statute of limitations for breach of contract actions and the cause of action accrues at the time of the breach. The Saenger Org. v. Nationwide Ins. Licensing Assocs., Inc., 119 F.3d 55, 64 (1st Cir. 1997) (citing Mass. Gen. Laws ch. 260 § 2). Plaintiff filed this action on August 24, 2005. Therefore, plaintiff may only recover for breaches that took place between August 24, 2005, and August 24, 2011.

### 1.     Maintenance and Operating Expenses

Plaintiff claims defendant did not pay its proportionate share of allocable expenses as section 3(c) of the Lease requires.  See Docket #28, Ex. 22, at 2 (itemizing nineteen categories of allocable expenses for which plaintiff claims defendant is liable).[2]  Section 3(c) provides:

> Tenant agrees to pay its proportionate share of the following: common area charges . . . maintenance charges, operating expenses, real estate taxes, [and] insurance premiums . . . .  Tenant's proportionate share shall be determined by dividing the square footage of the Leased Premises by the square footage of the Building.
>
> Section 7 of the Lease lists the exclusive responsibilities of plaintiff as landlord:
>
> Landlord shall have the duty and obligation (a) to maintain and repair all electrical, plumbing, heating, ventilation and air conditioning and other mechanical systems located in or serving the Leased Premises or the Building; (b) to maintain and make all repairs to the roof and structural portions or members of the Leased Premises or the Building including, but not limited to, foundations and foundation footings, walls, concrete floors, roofs, and roof surfaces, and all load bearing partitions and structures; (c) to maintain and make all repairs to the exterior of the Leased Premises or the Building.

Plaintiff's claim is without merit.  First, many of the expenses it seeks to pass on to defendant are exclusive landlord responsibilities per Section 7 of the lease.  Some of the repairs were made to the exterior of the building (awnings, painting, siding, windows) and therefore fall within Section 7.  Others are specifically enumerated

---

[2]The categories are: awnings, blueboard/plaster, carpentry, electrical, flooring, heat-electric, insulation, insurance, painting, plumbing, repairs and maintenance, roofing, rubbish material, siding, snow plowing, supplies, taxes, water and windows.

3

landlord responsibilities (electrical, plumbing, roofing).[3]  As I stated in the first summary judgment memorandum, defendant is not required to pay for "costs that are specifically attributable to the items of maintenance and repair delineated as the landlord's responsibilities under the Lease."  Summ. J. Mem., Docket #19, at 9.

Second, plaintiff fails to articulate a valid basis for the remainder of the categories.  In some cases, Peter Ferri, plaintiff's President, could not remember whether the relevant repair was made to a common area, justifying a proportionate charge to defendant, or to some other part of the property.  See Ferri Dep., Docket #28, Ex. 20, at 94 ln. 11-13 (blueboard and plaster: "Whether it be a common hallway or some specific repair, I can't say exactly where it all went."); id. at 94 ln. 22 – 95 ln. 1 (carpentry charge "was pretty much to cover all of the labor and then some for the two Brazilians who pretty much worked, you know, nonstop for like three or four years helping to do all the work that we did on the property"); id. at 104 ln. 1-4 (heat-electrical charge "is a pure reflection of just what it cost me out of pocket to pay for all of the electricity that I couldn't bill to other tenants that just kept the property going");  id. at 104 ln. 17-18 (insulation: "[j]ust some insulation I bought, and I am not sure for what project"); id. 110 ln. 24 – 111 ln. 2 (repairs and maintenance: "I can't tell you specifically like exactly every part of it, but it is of the same general category where

---

[3]Plaintiff states these categories, despite being separately enumerated in a different section of the Lease, "fall within the catch-all of common area charges, maintenance charges, [and] operating expenses in Section 3(c)." Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Docket #31, at 7.  This reading of the Lease attempts to create ambiguity where none exists.  The Lease explicitly states these categories are a "duty" and "obligation" of the landlord.  The most natural reading of "duty" and "obligation" imposes upon the landlord not just the responsibility of performing the work, but paying for it as well.  See Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995) (stating unambiguous contract language should be given its plain and natural meaning).

things that have to be done on the property to keep it going . . . ."); id. at 114 ln. 1-4 (supplies "refers to anything that I bought like, say, at Home Depot or – Home Depot was probably the biggest place that I bought stuff."). In others, Ferri conceded the charges had nothing to do with common areas. Id. at 111 ln. 16-21 (rubbish charge pertained to removing construction debris from another part of the building); id. at 113 ln. 4-24 (defendant was billed separately for snow plowing and paid the bill during the term of the Lease); id. at 115 ln. 21 – 116 ln. 4 (taxes are not for real estate, even though the Lease obligates defendant to pay a proportionate share of only real estate taxes). In still others, plaintiff simply provides no documentation to substantiate the charge (flooring, water, management fee). Ferri's vague recollections do not permit recovery.

### 2. Insurance Premiums

Plaintiff sought to charge defendant its proportionate share of $169,362.69 in insurance premiums, per Section 3(c) of the Lease. Plaintiff provided no documentation substantiating this figure. Id. at 104 ln. 24 – 106 ln. 5. In its opposition memorandum, however, plaintiff included copies of two insurance polices: a 2005 commercial property policy from Lexington Insurance Company and a 2007 commercial property, general liability, and umbrella policy from Zurich. See Docket #30, Ex. 1. Defendant moved to strike these documents because plaintiff did not produce them until discovery had closed and defendant had filed its motion for summary judgment.

Federal Rule of Civil Procedure 26(a)(ii) requires a party to disclose all documents it may use to support its claims. If a party fails to provide information as

required by Rule 26(a), it may not use that information to supply evidence on a motion, at a hearing, or at trial.  Fed. R. Civ. P. 37(c)(1); Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este, 456 F.3d 272, 276 (1st Cir. 2006) ("The baseline rule is that the required sanction in the ordinary case is mandatory preclusion." (internal quotation and citation omitted)).  When considering such a motion, I consult many factors, among them (1) the justification for the late disclosure; (2) the harmlessness of the late disclosure; (3) the history of the litigation; (4) the impact of the late disclosure on the orderly progression of the docket; and (5) the party's need for the late-disclosed evidence.  Harriman v. Hancock Cnty., 627 F.3d 22, 30 (1st Cir. 2010).

Plaintiff's purported explanation for the delay is that the policies "may" have been lost in a 2010 fire.  Docket #30, Ex. E, ¶ 14.  Yet nothing prevented plaintiff from obtaining a copy of the policies from its insurers in the approximately three-year period between the fire and the close of discovery.  Moreover, the fact that the late disclosure occurred at the summary judgment stage, rather than the later pre-trial stage, does not make it harmless.  See Harriman, 627 F.3d at 31 (affirming district court's conclusion that disclosure of affidavits from new witnesses in memo opposing summary judgment was prejudicial); Primus v. United States, 389 F.3d 231, 236 (1st Cir. 2004) (disclosure of new information between summary judgment and trial found prejudicial).  Defendant has gone to the time and expense to write a dispositive motion relying on Ferri's lack of knowledge regarding the basis of the insurance charge.  To allow plaintiff to change the state of the record on this matter without substantial justification would be unfair.  Finally, although plaintiff may need the insurance documents, "[r]eversals based on a

sanctioned party's need for precluded evidence are rare, and seldom based on that factor alone." Harriman, 627 F.3d at 32.  No other factors justify withholding preclusion in this instance.  I conclude the evidence should be stricken.[4]

Plaintiff's allocable expenses claims follow different paths to the same fate.  The expenses it seeks to place on defendant are either its own responsibility or fail for lack of proof.  Defendant is entitled to summary judgment on plaintiff's allocable expenses claim.

### 3. Real Estate Taxes

Section 3(c) of the Lease obligates defendant to pay a proportionate share of real estate taxes.  Plaintiff claims defendant's proportionate share is $12,312.54.  Of this amount, $8,096.84 represents a ten percent share of taxes on the building defendant occupied in tax years 2005 through 2009.  Supplemental Answer to Interrogs. 14, Docket #28, Ex. 21, at 8-9.  The remaining sum represents a fifty percent share of two parking lots defendant allegedly used during the same time period.  Id.  Defendant does not dispute its obligation to pay its share of real estate taxes, relying instead on its asserted affirmative defenses of waiver, estoppel and laches.

#### a. Waiver

Defendant argues plaintiff waived its right to collect taxes and other costs by not billing defendant for those expenses during its tenancy.  "Waiver is the intentional relinquishment of a known right."  Niagra Fire Ins. Co. v. Lowell Trucking Corp., 56

---

[4] In the same motion, defendant moves to strike an affidavit from Ferri and an unauthenticated property survey of the premises.  For the same reason, these documents are also stricken.

N.E.2d 28, 31 (Mass. 1944). "[T]he Massachusetts standard for waiver is an uncompromising one.  A finding of waiver must be premised upon 'clear, decisive, and *unequivocal* conduct on the part of an authorized representative . . . indicating that it would not insist on adherence to the [provision].'" Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 992 (1st Cir. 1988) (quoting Glynn v. City of Gloucester, 401 N.E.2d 886, 892 (Mass. App. Ct. 1980) (emphasis in original)). Plaintiff took no such unequivocal step here.  It was only after Ferri had an "ephiphany" that plaintiff could hold defendant accountable for its share of real estate taxes that plaintiff sought payment.  Plaintiff's failure to do so during defendant's tenancy is better characterized as inaction based on lack of knowledge rather than an intentional relinquishment of its right to collect.  Defendant's waiver defense is not persuasive.

### b.     Estoppel

To succeed on its estoppel defense, defendant must show "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission." Bongaards v. Millen, 793 N.E.2d 335, 339 (Mass. 2003).  "Silence may satisfy the first element of estoppel where it constitutes a representation of consent." Reading Co-Op. Bank v. Suffolk Constr. Co., 984 N.E.2d 776, 786 (Mass. 2013).  Here, defendant presents no evidence that plaintiff's silence—its failure to collect taxes during the Lease period—was a representation intended to induce defendant to continue to extend the Lease term or otherwise rely on its representations.  Further, even assuming the first

8

element is satisfied, defendant cannot show it extended the term of the Lease in reliance on plaintiff's supposed representation it would not be required to pay taxes and costs. The evidence does not support defendant's estoppel defense.

### c.  **Laches**

Finally, defendant contends the equitable doctrine of laches bars plaintiff's claim. "A judge may find as a fact that laches exists if there has been unjustified, unreasonable, and prejudicial delay in raising a claim." Srebnick v. Lo-Law Transit Mgmt., Inc., 557 N.E.2d 81, 85 (Mass. App. Ct. 1990). "[U]nreasonable delay in pressing a legal claim does not, as a matter of substantive law, constitute laches." Id. Once again, the record discloses no persuasive evidence of a change of position by defendant based on plaintiff's failure to pursue collection during the Lease period that would amount to cognizable prejudice.[5] Consequently, defendant is not entitled to a laches defense.

Defendant has not challenged its obligation to pay a proportionate share of real estate taxes and has not succeeded on its affirmative defenses. Therefore, summary judgment in favor of plaintiff for real estate taxes for the leased building is appropriate. However, plaintiff has not met its burden of proving the parking lots are part of the premises defendant leased. Therefore, it may not recover taxes attributable to the parking lots.

---

[5]Defendant cites an affidavit from Genevieve Krumm, an employee in its real estate department, in which Krumm states she would not have recommended defendant renew the Lease for the property had it known plaintiff would have imposed the costs it now seeks as damages in the present matter. Aff. of Genevieve Krumm, Docket #28, Ex. 19. The impact of this affidavit is limited, however, because the vast majority of damages plaintiff seeks are clearly not chargeable to defendant under the terms of the Lease.

### 4. Lost Rents

Finally, plaintiff claims it is owed $310,128.00 in lost rents on the ground that defendant left the building in un-tenantable condition when it vacated the premises. Yet plaintiff does not state how, if at all, defendant left the premises in worse condition than when it took possession of the building in 1995. On the contrary, it made improvements which it was not required to remove. Furthermore, plaintiff has indeed re-let the premises. The undisputed facts do not support a claim for lost rents.

### B. Restoration Costs

Plaintiff seeks payment of the cost of returning the property to its condition at the signing of the first lease addendum on November 30, 1997. By that time, defendant had installed newly refinished floors and numerous doors used to offload trucks. Plaintiff claims that when defendant vacated the premises, it had to remove the existing steel floor plates, plywood floors and doors, and replace them with new doors and an epoxied plywood floor. It seeks $77,820.00, the cost of this replacement. See Supplemental Answers to Interrogs., Docket #28, Ex. 21, at 13-14 (estimate of cost from contractor American Construction Specialties).

> Section 24 of the Lease provides:
>
> Upon expiration or other termination of this Lease, Tenant shall yield possession of the Leased Premises to Landlord in substantially the same order and condition as existed when Tenant took possession of the Leased Premises, wear and tear, casualty, condemnation and acts of God and items which Tenant is not obligated to repair, maintain or replace excepted.
>
> Section R-7 of the Lease Rider states:

>Tenant may, but shall not be required to remove any alterations, additions, or improvements to the Leased Premises.  If Tenant removes any such items, Tenant shall repair any damage caused by such removal.  Any items not removed by Tenant shall become Landlord's property upon termination of this Lease.

The terms of the Lease do not support plaintiff's claim.  Whether the operative date that defines the original condition is 1995 or 1997 is irrelevant as the Rider clearly leaves to defendant the decision whether to remove or leave improvements or alterations to the premises.  Defendant is entitled to summary judgment as to this item.

## IV. Conclusion

Defendant's motion to strike (Docket # 37) is ALLOWED.  Defendant's renewed motion for summary judgment (Docket # 26) is DENIED as to plaintiff's claim for real estate taxes and ALLOWED in all other respects.  Plaintiff's cross-motion for summary judgment (Docket # 29) is ALLOWED as to payment of real estate taxes for the building premises and DENIED in all other respects.  The parties shall submit a joint statement listing the appropriate amount of real estate taxes payable by defendant.


   September 30, 2013                     /s/Rya W. Zobel
       DATE                              RYA W. ZOBEL
                                       UNITED STATES DISTRICT JUDGE